UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT DUDIS,

    Plaintiff,

v.

                                  Case No. 11-14024

MARY JANE M. ELLIOTT, P.C.        HON. MARIANNE O. BATTANI

    Defendant.

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

This matter is before the Court on Defendant Mary Jane M. Elliott, P.C.'s ("Elliott") Motion for Summary Judgment. (Doc. 13). The Court heard oral argument on June 21, 2012, and at the conclusion of the hearing took the motion under advisement. For the reasons that follow, the Court **GRANTS** Defendant's Motion for Summary Judgment.

**II.    STATEMENT OF FACTS**

Midland Funding LLC retained Defendant to collect a debt owed by Tammy Dudis, Plaintiff's sister-in-law. According to Plaintiff Robert Dudis, Defendant started placing telephone calls to his home telephone in or around June 2011. (Doc. 15, Ex. A at ¶¶ 1, 2). Defendant never left a message for Plaintiff. Id. These calls occurred once or twice per week. (Id. at ¶ 3). Around the end of July or beginning of August 2011,

after approximately two months of telephone calls without messages, Dudis contacted Defendant. (Id. at ¶ 4). During this call, a female employee at Elliott informed Dudis that Defendant was calling to collect a debt from Tammy Dudis, Plaintiff's sister-in-law. (Id. at ¶ 5-6). Plaintiff explained to the employee that Tammy Dudis did not live at Plaintiff's home, where the Defendant was calling. (Id. at ¶ 6-7). According to Plaintiff, the employee informed Plaintiff his number would be removed from the telephone system and that it would stop calling. (Id. at ¶ 8). Elliott asserts that it does not have any record of ever speaking to Dudis at the specified telephone number. (Doc. 13, Ex. 2). Dudis claims that Defendant did not stop calling. (Id. at ¶ 9).

In response, Plaintiff wrote a "cease and desist" letter to Defendant explaining that Tammy Dudis did not live with him and to stop calling. (Doc. 15, Ex. E). In his letter, Dudis stated that any further contact would be considered harassment. (Id.) This letter, which provided Plaintiff's address, was sent through U.S. Postal Service certified mail and received by Defendant on August 15, 2011. (Doc 15, Ex. E, G). According to Elliott, the letter was did not contain the name of the person it was attempting to contact, the phone number being called, or any other information that would cause it to stop calling Plaintiff's number. (Doc 13, Ex. 1).

After receiving this letter, Elliott allegedly placed four calls to Dudis. (Doc. 15, Ex. A at ¶¶ 11-12). Elliott insists that only three calls were made. (Doc. 13, Ex. 2). Elliott stopped calling after it was served with Plaintiff's lawsuit on September 21, 2011. (Id. at ¶¶ 13-14).

**III.     STANDARD OF REVIEW**

Summary Judgment is appropriate only when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.  Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  The Court "must lend credence" to the non-moving party's interpretation of the disputed facts.  Martin v. City of Taylor, 509 F.3d 234, 238 (6th Cir. 2007) (citing Scott v. Harris, 127 S.Ct. 1769, 1775 (2007)).  The non-moving party may not rest upon its mere allegations, but rather must set out specific facts showing a genuine issue for trial. See Fed. R. Civ. P. 56(c)(1).  There must be evidence on which the jury could reasonably find for the non-moving party. Hopson v. Daimler Chrysler Corp., 306 F.3d 427, 432 (6th Cir. 2002).

**IV.     ANALYSIS**

Plaintiff brings claims alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. 1692 *et seq.* ("FDCPA") and the Michigan Occupational Code, Mich. Comp. Law 339.901 *et seq.* ("MOC").  Defendant maintains that it is entitled to summary judgment on the following four grounds:  1) that the Plaintiff refused to answer requests for admissions with the time allowed by applicable rules; 2) that its alleged calls were not done with the intent to annoy, abuse, or harass as required by § 1692d(5); 3) that its alleged conduct would merely be the result of a bona fide error, an affirmative defense to the FDCP, and 4) that Mich. Comp. Laws § 339.915(n) does not apply to Defendant, nor does Defendant's alleged conduct violate this statute.  The Court discusses each below.

    **A.  Requests for Admissions**

Defendant asserts that Dudis failed to answer discovery within the requisite time. According to the Court's order dated December 8, 2011, the cut-off for discovery was February 28, 2012. On January 24, 2012, Defendant served its interrogatories, request to produce, and request for admissions.  (Doc. 13, Ex. 4).  Instead of filing timely responses to discovery, Plaintiff emailed his responses to Defendant on March 19, 2012. (Doc.13, Ex. 5).

According to Fed. R. Civ. P. 36(a)(3), "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."  In accordance with this rule, Plaintiff has admitted that

> [he] did not have any oral communications with the Defendant or any agent or representative of the Defendant; 2) [t]he Plaintiff did not provide the Defendant with any information related to Tammy Dudis; 3) [t]he Defendant did not violate any provision of 15 U.S.C. 1692, *et seq.*; 4) [t]he letter attached to the complaint contained insufficient information for the Defendant to properly identify the phone number. . .and stop calling it.

(Doc. 13, Ex. 3).

"[T]he failure to respond in a timely fashion does not require the court automatically to deem all matters admitted." United States v. Petroff-Kline, 557 F.3d 285 (6th Cir. 2009) (quoting Gutting v. Falstaff Brewing Corp., 710 F.2d 1309, 1312 (8th Cir. 1983)) (internal quotation marks omitted). However, the Sixth Circuit has recognized "the understandable discretion vested in district courts to permit a longer time for a written answer to a request for admissions and to accept 'the filing of an answer that would otherwise be untimely'." Id. Despite Plaintiff's lack of punctuality and his failure to move to set aside the admissions, the Court addresses the merits of the case below.

### B. FDCPA Claims

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The statute reads, in pertinent part:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

15 U.S.C. § 1692d, (5).

Therefore, the Court must determine whether Defendant's behavior amounts to harassment, oppression, or abuse within the meaning of the statute's general provision; and whether its phone calls occurred repeatedly or continuously with the intent to annoy, abuse, or harass. "The determination of whether a debt collection agency's telephone calls amount to actionable harassment or annoyance turns not only on the volume of calls made, but also on the pattern of calls. Saltzman v. I.C. Sys. Inc., No. 09-10096, 2009 WL 3190359 at *7 (E. D. Mich. Sept. 30, 2009) (quoting Akalwadi v. Risk Management Alternatives, Inc., 336 F. Supp.2d 492, 505 (D. Md. 2004)) (internal quotations omitted)). Additionally, "intent may be inferred from the . . . substance of the telephone calls that [the Plaintiff] received from the debt collector or the place to which the calls were made." Young v. Asset Acceptance, LLC, No. 3:09-2477, 2011 WL 1766058 (N.D. Tex. May 20, 2011) (citing Kerwin v. Remittance Assistance Corp., 559 F. Supp.2d 1117, 1124 (D. Nev. 2008)). Although the volume, pattern, time, and setting of phone calls is susceptible to a degree of subjectivity, some factual benchmarks include: multiple calls made over a two-day period that included implications of threats (see Bassett v. I.C. Systems, Inc., 715 F. Supp.2d 803 (N.D. Ill. 2010); continuous calls placed over several days to both the plaintiff's home and cell phone (see Rucker v. Nationwide Credit, Inc., No. 09-2420, 2011 WL 25300 (E.D. Cal. Jan. 5, 2011)); multiple phone calls placed in one day before 9:00 A.M. (see Kerwin, 559 F. Supp. 2d 1117);

7

200 calls made over the course of nineteen months, included multiple calls in one day after the debtor warned the defendant (see Josephine v. J.J. MacIntyre Cos, LCC, 238 F. Supp. 2d 1158 (N.D. Calif. 2002)); and three calls in a five hour period with messages (see Akalwadi, 336 F. Supp. 2d 492).

Plaintiff asserts that his complaint is based on three to four phone calls, to his house, over the course of a month. Dudis, however, does not offer any evidence that conversations took place during these calls or that these calls were made with the intent to annoy, abuse, or harass. Here, the Court finds that no reasonable juror given the facts, even when viewed in a light most favorable to the non-moving party, could possibly find in favor of Dudis. Furthermore, none of the benchmarks used to establish intent to harass or annoy are present. Accordingly, the Court finds Defendant is entitled to summary judgment.

### C. Bona Fide Error Defense

Even if Defendant had been in violation of the FDCPA, the bona fide error defense would be available. Section 1692k(c) states that "[a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." In Smith v. Transworld Sys., Inc., 953 F. 2d 1025, 1031 (6th Cir. 1992), the Court determined that defendant had policies and procedures in place based on affidavits and an instruction manual. Of course, these errors must be made in good faith and cannot be the result of fraud or deceit. Caputo v. Prof'l Recovery Servs., Inc.,

261 F. Supp.2d 1249, 1257-58 (D. Kan. 2003).  Therefore, a debt collector's mere assertion that the procedures are reasonably adapted to avoid such errors is not sufficient to satisfy the "procedures" requirement of the bona fide error defense. Reichert v. Nat'l Credit Sys., Inc, 531 F.3d 1002, 1007 (9th Cir. 2008).  A debt collector must explain the procedures and the manner in which they are reasonably adapted to avoid such error.  Id.

Elliott offers evidence, in an affidavit, to suggest that it has a policy in place that is "reasonably adapted" to avoid clerical errors.  (Doc. 13, Ex. 2).  Additionally, Defendant noted during oral argument that it has no incentive to call Plaintiff because he is not even the debtor.  Thus, the bona fide error defense would likely absolve Defendant even if it had violated the FDCPA.

### D.  Mich. Comp. Laws § 339.915(n)

Finally, departing from the FDCPA, Defendant is entitled to summary judgment regarding the state claim.  Mich. Comp. Laws § 339.915(n) reads:

> A licensee shall not commit 1 or more of the following acts:
>
> (n) Using a harassing, oppressive, or abusive method to collect a debt, including causing a telephone to ring or engaging a person in telephone conversation repeatedly, continuously, or at unusual times or places which are known to be inconvenient to the debtor.

According to the definitions set forth in Mich. Comp. Laws § 339.915, a "[c]ollections agency does not include a person whose collection activities are confined and are directly related to the operation of business other than that of a collection agency such as. . .[a]n attorney handling a claims and collections on behalf of clients

and in the attorney's own name." Mich. Comp. Laws § 339.901(b)(xi).  Therefore, the plain language of the statute excludes Elliott from the "collection agency" classification.

Even if Defendant did fall within the scope of a collection agency under the statute, its conduct does not amount to harassment, oppression, or abuse as a matter of law.  Elliott placed, at most, four calls to Plaintiff's home over the course of a month after receiving the "cease and desist" letter.  Although this conduct mightbe irritating, it does not fall within the scope of the behavior prohibited by the statute ("causing a telephone to ring. . .repeatedly, continuously, or at unusual times or places").

### V. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

                                       s/Marianne O. Battani
                                            MARIANNE O. BATTANI
                                            UNITED STATES DISTRICT JUDGE

DATED: August 2, 2012

## CERTIFICATE OF SERVICE

Copies of this Order were served upon counsel of record on this date by ordinary mail and/or electronic filing.

s/Bernadette M. Thebolt<br>
Case Manager